IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| SOUTHWEST RANCHING, INC., | § | CASE NO. 01-23337-C-11 |
| DEBTOR | § | (CHAPTER 11) |
| | § | |

---

MOTION FOR LEONARD HOSKINS; MARCUS ROGERS, RECEIVER;
AND THEIR ATTORNEYS TO APPEAR AND SHOW CAUSE WHY THEY SHOULD
NOT BE HELD IN CONTEMPT FOR VIOLATING THIS COURT'S INJUNCTION

---

THIS MOTION SEEKS AN ORDER THAT MAY
ADVERSELY AFFECT YOU. IF YOU OPPOSE THE
MOTION, YOU SHOULD IMMEDIATELY CONTACT THE
MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU
AND THE MOVING PARTY CANNOT AGREE, YOU
MUST FILE A RESPONSE AND SEND A COPY TO THE
MOVING PARTY. YOU MUST FILE AND SERVE YOUR
RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS
SERVED ON YOU. YOUR RESPONSE MUST STATE WHY
THE MOTION SHOULD NOT BE GRANTED. IF YOU DO
NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE
GRANTED WITHOUT FURTHER NOTICE TO YOU. IF
YOU OPPOSE THE MOTION AND HAVE NOT REACHED
AN AGREEMENT, YOU MUST ATTEND THE HEARING.
UNLESS THE PARTIES AGREE OTHERWISE, THE
COURT MAY CONSIDER EVIDENCE AT THE HEARING
AND MAY DECIDE THE MOTION AT THE HEARING.

REPRESENTED PARTIES SHOULD ACT THROUGH
THEIR ATTORNEY.

TABLE OF CONTENTS

INTRODUCTION ....................................................................................................1

JURISDICTION ......................................................................................................3

BACKGROUND .....................................................................................................3

A.     The Probate Case Begins. ...........................................................................3

B.     Lee Roy Brings Litigation In 2001 ............................................................4

C.     2002 Settlement And Permanent Injunction ..............................................5

D.     2003 Mutual Release And Indemnity Agreement ......................................6

E.     2004 Sale Of The Tilden Ranch....................................................................7

F.     Len Brings Litigation In 2008......................................................................7

G.     Len Loses The Arbitration ...........................................................................8

H.     The Arbitrator Appoints A Receiver............................................................9

I.     The Receiver Delivers A Report Favorable To Len .....................................9

J.     Len and The Receiver Unsuccessfully Challenge the Arbitration Award ........................10

K.     The Receiver Goes To The Probate Court ................................................11

L.     The Trusts Terminate Upon Hazel's Death ..............................................11

M.     The Receiver Now Intends To Re-Litigate Everything ....................................12

ARGUMENT AND AUTHORITIES....................................................................13

A.     Every Injunction Is Binding Upon Parties, Their Agents, Their Attorneys, And All Persons Who Act In Concert Or Participate With Any Of Them.....................................13

B.     The Injunction Is Binding Upon Len, The Receiver, And Their Attorneys ....................15

C.     If Len, The Receiver, And Their Attorneys Dispute That They Have Acted In Concert To Bring Claims Against Cliff, Then The Court Should Allow Discovery.........17

D.     The Receiver Is Attempting To Bring Len's Claims Against Cliff.................................18

E.  The Court's October 30, 2013 Order Regarding The Receiver Does Not Apply Because The Issue Now Presented Did Not Exist At That Time And Was Neither Litigated Nor Decided...................................................................................................19

CONCLUSION..........................................................................................................................25

CERTIFICATE OF SERVICE ..................................................................................................27

APPENDIX.................................................................................................................................30

4849-7534-9045.3

TO THE HONORABLE JUDGE OF THE COURT:

Colonel Clifton Hoskins files this Motion for Leonard Hoskins; Marcus Rogers, Receiver; And Their Attorneys To Appear And Show Cause Why They Should Not Be Held In Contempt For Violating This Court's Injunction, and respectfully states as follows:

## INTRODUCTION

Lee Roy Hoskins Sr. ("Cowboy") was married to Hazel Quinn Hoskins ("Hazel"). They had three sons: Lee Roy, Jr. ("Lee Roy"), Colonel Clifton ("Cliff"), and Leonard Kenton ("Len"). Cowboy died in 1985. Hazel was his Executrix and Trustee of two trusts created in his Will. For many years, the Hoskins family has been embroiled in litigation concerning the administration and distribution of Cowboy's Estate.

In 1994, Hazel, Lee Roy, Cliff, and Len signed an affidavit stating that the trusts were not necessary and had not been funded. In 2001, Hazel funded one of the trusts, and Lee Roy filed a lawsuit alleging that Hazel and Cliff engaged in self-dealing with assets of the Estate and that Hazel breached her fiduciary duties concerning the trusts.

In 2002, the family members entered into a global settlement and released all claims against each other, including all actions taken concerning the trusts. This Court blessed the settlement and because of the litigious nature of the family, entered a permanent injunction prohibiting further litigation concerning the administration and distribution of Cowboy's Estate.

In 2004, Cliff purchased a ranch from Hoskins, Inc., a company that was once owned by Cowboy and Hazel. In 2008, Len sued Cliff over the purchase of that ranch. Len alleged that the sale was a fraudulent transfer and that Cowboy's ownership of Hoskins, Inc. was not properly distributed from Cowboy's Estate to one of the trusts. This Court referred that case to arbitration,

4849-7534-9045.3

and Len lost.  A take nothing judgment was entered against Len.  Len appealed all the way to the Supreme Court of Texas, which affirmed the judgment on May 20, 2016.

Len has refused to give up.  He knows that his claims to recover the ranch from Cliff are barred by this Court's injunction, res judicata, the statute of limitations, and release.  Therefore, he is attempting to accomplish indirectly what he cannot do directly.  After losing the arbitration concerning the ranch, Len sought the appointment of a receiver for the two trusts.  Marcus Rogers was appointed as Receiver.  Len paid the Receiver's fees; the Receiver has acted as Len's agent; and the Receiver intends to pursue claims against Cliff on behalf of Len that were settled in 2002 and were resolved in the arbitration.

The Receiver recently prepared a state court petition that he intends to file against Cliff. The proposed petition would place into controversy the entire administration and distribution of Cowboy's Estate.  The Receiver wants to reclassify Cowboy and Hazel's community property as Cowboy's separate property.  He is seeking to recover all property owned directly or indirectly by Cowboy and Hazel (most importantly, the ranch) and redistribute it, for the benefit of Len.  He is seeking to unwind 30 years of transactions made by Hazel concerning the administration and distribution of Cowboy's Estate.

The litigation that the Receiver now threatens is barred by this Court's injunction.  Len, the Receiver, and their attorneys have acted in concert to generate the threatened litigation.  They have willfully attempted to evade the injunction by using the Receiver to bring Len's claims against Cliff.  Each of them should be held in contempt and sanctioned.  Cliff requests that the Court enforce its injunction to prevent the instigation and continuation of further litigation concerning the administration and distribution of Cowboy's Estate, matters which have been fully and finally settled.

## JURISDICTION

The Court has jurisdiction under 28 U.S.C. § 1334.  Bankruptcy courts plainly have jurisdiction to interpret and enforce their prior orders.  *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009) (bankruptcy court injunction barred claims filed in state court).  Proceedings to enforce this Court's injunction cannot be brought in any other court.  *Celotex Corp. v. Edwards*, 514 U.S. 300, 313 (1995) (judgment creditors were obligated to obey bankruptcy court's injunction and could not collaterally attack it in other courts).  In addition, this Court has broad statutory authority to take any action and make any determination that is "necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process."  11 U.S.C. § 105.

## BACKGROUND[1]

### A.      The Probate Case Begins

On December 22, 1950, Cowboy married Hazel.  Exhibit 2 (Mutual Release and Indemnity Agreement).  Hoskins, Inc. was formed by Cowboy on April 25, 1980, during his marriage to Hazel.  *Id.*; Exhibit 3 (Certificate of Incorporation).  Cowboy and Hazel jointly owned 100% of the shares of Hoskins, Inc.[2]  Hoskins, Inc. owned property in McMullen County known as the Tilden Ranch.  Exhibit 4 (Deed dated June 24, 1980).

Cowboy died in 1985.  Exhibit 2 (Mutual Release and Indemnity Agreement).  Hazel was named in Cowboy's Will as Independent Executrix of his Estate and as Trustee of two

---

[1] For the Court's convenience, attached as Exhibit 1 is a chronology of relevant facts.

[2] In the Receiver's Report dated March 14, 2016, filed in *Estate of Lee Roy Hoskins, Sr., Deceased*, Case No. 1785 in the County Court of Live Oak County, the Receiver admits at page 42: "The 12,538 shares preferred and the 75,000 shares common represented all the issued and outstanding stock of Hoskins, Inc. Hence, Cowboy and Hazel owned as community property all stock interests in Hoskins, Inc. and Cowboy's Estate owned an undivided one-half community property interest in the stock of Hoskins, Inc."

3

testamentary trusts—the Marital Deduction Trust and the Residuary Trust (hereinafter, the "Trusts"). Exhibit 5 (Last Will and Testament of Cowboy).

At the time of Cowboy's death, 50% of the shares of Hoskins, Inc. became Hazel's individual property and 50% of the shares became property of Cowboy's Estate.

Cowboy's Will was admitted to probate in *Estate of Lee Roy Hoskins, Sr., Deceased,* Cause No. 1785, in the County Court of Live Oak County, Texas (the "Probate Case").

**B.      Lee Roy Brings Litigation In 2001**

In 1994, Hazel, Lee Roy, Cliff, and Len signed an affidavit stating that the Trusts were not necessary and had not been funded. Exhibit 6 (Affidavit). Several years later, in 2001, Hazel funded the Marital Deduction Trust.

On June 29, 2000, Hoskins, Inc. filed suit in Live Oak County against a company called Southwest Ranching, Inc., seeking partition of real property.

A little more than a year later, Lee Roy filed suit in Live Oak County against Hazel and Cliff, alleging that they engaged in self-dealing with the assets of the Estate. Exhibit 7 (Lee Roy's Original Petition). Lee Roy alleged that Hazel ignored Cowboy's Will, breached her fiduciary duties, and mismanaged the Trusts. *Id.* Lee Roy sought damages and the removal of Hazel as Trustee. *Id.*

On October 2, 2001, Southwest Ranching, Inc. filed a voluntary petition in bankruptcy in a matter styled *In re: Southwest Ranching, Inc.*, Cause No. 01-23337-C-1, in the United States Bankruptcy Court for the Southern District of Texas, Corpus Christi Division (the "Bankruptcy Case"). The state court suits filed by Hoskins, Inc. and Lee Roy were removed to the Bankruptcy Court as Adversary Proceeding Nos. 01-2120 & 01-2121 (collectively, the "Adversary Proceedings").

4

On April 16, 2002, in the Adversary Proceedings, Lee Roy filed his Second Amended Complaint against Hazel and Cliff.  He restated his earlier allegations and added that Hazel, as Executrix of the Estate, failed to transfer property into the Trusts and comingled Estate assets with her own assets.  Exhibit 8 (Lee Roy's Second Amended Complaint).

## C.    2002 Settlement And Permanent Injunction

On April 20, 2002, all claims between Lee Roy, Hazel, Cliff, and Len were settled and released.[3]  Exhibit 9 (Settlement Agreement).  Under the settlement agreement, Lee Roy received ownership of Southwest Ranching, Inc. and other property in exchange for relinquishing all of his interests in the Estate, the Trusts, and Hoskins, Inc.  *Id*.  The parties agreed to execute a mutual release and indemnity agreement, and Len expressly released his claims against all other parties.  *Id*. at ¶¶ s, w.

On July 1, 2002, this Court (Schmidt, J., presiding) entered an Order approving the settlement agreement.  Exhibit 10 (Order Authorizing Compromise of Controversy).  Within the Order, this Court also entered the following permanent Injunction:

> The Court further finds that the Parties have requested and agreed to in this Motion and ***the court therefore Orders a Permanent Injunction prohibiting the instigation of or continuation of any litigation by the Parties against any other Party***; the bringing of any lawsuit against any of the other Parties; from bringing any lawsuit against the accountants, financial advisors and attorneys of any of the Parties; to refrain from bringing or continuing any litigation without first making application to this court for authority to bring or continue any suit; and obtaining an order of this court authorizing the filing or continuation of any such suit ***on subjects pertaining to the subject matter of this litigation viz any suit pertaining to the administration or distribution of the estate of Lee Roy Hoskins, Sr., deceased, or the acts or failure to act concerning the administration or distributions under the Residual Trust or the Marital Deduction Trust*** or any other trust provided for under the terms of the probated will of Lee Roy Hoskins, Sr., deceased, ***together with any related issues of disproportionate distributions, conspiracy, accountings, negligence, fraud, actions taken or failures to act, or***

---

[3]  Hazel, who was serving as Executrix of Cowboy's Estate and as Trustee of both Trusts, was released in all of her capacities.

> ***any other means or manner of putting into question the settlement of this estate
> of Lee Roy Hoskins, Sr. and/or Hazel Hoskins*** and/or the administration of this
> bankruptcy estate.

*Id.* (emphasis added).  The Injunction defines the "Parties" to include Hazel, Lee Roy, Cliff, Len, and the wives and children of Lee Roy, Cliff, and Len.  *Id.*

On October 18, 2002, this Court entered a Judgment in conformity with the Order, and dismissed the Adversary Proceedings.  Exhibit 11 (Judgment).  The Judgment contains the Court's permanent Injunction.  *Id.*  The Court's Injunction and Judgment were not appealed and are final.

**D.      2003 Mutual Release And Indemnity Agreement**

In 2003, the parties executed a Mutual Release and Indemnity Agreement.  Exhibit 2 (Mutual Release and Indemnity Agreement).  The agreement referred to the transactions and occurrences made the basis of all prior litigation between the family members.  Each family member released all other family members from all claims, present and future, relating to the Estate and Trusts.[4]  Specifically, Len's release stated:

> As part of the consideration hereof . . . ***Leonard Kenton Hoskins . . . does hereby
> release and forever discharge Lee Roy Hoskins, Jr., Colonel Clifton Hoskins
> and Hazel Hoskins (in her individual capacity and in her capacity as executrix
> and trustee),*** their agents, servants, employees, officers, directors, attorneys,
> heirs, legal representatives, successors, assigns . . . and all persons, natural or
> corporate, in privity with them or any of them, ***from any and all claims and
> causes of action of any kind whatsoever, at common law, statutory, or
> otherwise, which the releasing party has or might have against the released
> parties, known or unknown, now existing or that might arise hereafter, directly
> or indirectly attributable to the above-described transactions, incidents,
> occurrences and litigation***, it being the intent of the releasing party to release and
> forever discharge the released parties from any and all claims, demands, actions
> and causes of action of any kind, of whatever type or nature and whether asserted
> or not.

---

[4]  Lee Roy's family includes his children Lee Ann Hoskins Kulka, Lee Roy Hoskins, III, and Andrea Clare Hoskins. Cliff's family includes his sons Blake Hoskins and Brent Hoskins.  Len's family includes his sons William Rex Hoskins and Daniel Kenton Hoskins.  All of these children approved and agreed to the Mutual Release and Indemnity Agreement and signed it before a notary public.  *See* Exhibit 2 at 11-18.

*Id.* (emphasis added).  Hazel, Cliff, and Lee Roy executed identical mutual releases.

**E.  2004 Sale Of The Tilden Ranch**

In 2004, Hoskins, Inc., the sole owner of the Tilden Ranch, sold that ranch to Cliff.  Exhibit 12 (Recorded Warranty Deed).  The Warranty Deed was filed of record on February 19, 2004, at vol. 427, p. 164 in the real property records of McMullen County.  "An instrument that is properly recorded in the proper county is . . . notice to all persons of the existence of the instrument . . . ."  TEX. PROP. CODE § 13.002(1).  It is undisputed that Len knew of the transfer no later than May 9, 2004.

**F.  Len Brings Litigation In 2008**

On May 7, 2008, Len filed suit in McMullen County against Hazel and Cliff, attacking the sale of the Tilden Ranch.  Exhibit 13 (Original Petition).  Len alleged that the Tilden Ranch was "property properly belonging to the Estate and Trusts" created under Cowboy's Will, and that the sale was a fraudulent transfer.  *Id.* ¶ 6.  Len also asserted the same claims that Lee Roy had filed in 2001 i.e., that Hazel failed to fund the Trusts and breached her fiduciary duties, and that Hazel and Cliff engaged in self-dealing with the Estate assets.  *Id.* ¶ 8.  On the same day, Len also filed a similar action in the Probate Case in Live Oak County, seeking to remove Hazel as Executrix of the Estate and to require an accounting.

One week later, after he was reminded of this Court's Injunction, Len nonsuited both of his state court actions.

On August 19, 2008, Len filed a motion in this Court, seeking relief from the Injunction and permission to commence state court litigation.  After conducting a hearing, this Court (Judge Schmidt, presiding) denied Len's motion for relief from the Injunction, but appointed an arbitrator and referred the dispute to arbitration.  Exhibit 14 (Amended Order).

### G.     Len Loses The Arbitration

On September 23, 2011, Len filed his complaint in arbitration against Hazel and Cliff, asserting the same claims that he had nonsuited in state court.  Exhibit 15 (Complaint).  Thus, he alleged that Hazel failed to properly fund the Trusts, that the sale of the Tilden Ranch to Cliff was a fraudulent transfer, and that Hazel and Cliff engaged in self-dealing, dissipating the Estate and Trusts in favor of Cliff.  *Id*.  Len also asserted that, in equity, he was a "true owner" of Hoskins, Inc.  *Id*.  In addition to damages and an order declaring the sale of the Tilden Ranch null and void, Len sought an accounting and the removal of Hazel as Executrix and Trustee.  *Id.*

Cliff and Hoskins, Inc. moved for summary judgment on the statute of limitations and lack of standing.  On February 14, 2012, the arbitrator granted the motion and dismissed, with prejudice, all claims against Cliff, all claims against Hoskins, Inc., and all claims concerning the sale of the Tilden Ranch.  Exhibit 16 (Order Granting Summary Judgment).  The arbitrator's order stated:

> IT IS, THEREFORE, ORDERED, ADJUDGED, AND DECREED that any and all claims and causes of action by Claimant concerning the February 19, 2004 sale of 1,355.42 acres of real property in McMullen County are **DISMISSED WITH PREJUDICE**.

> IT IS, FURTHER ORDERED, ADJUDGED, AND DECREED that any and all claims and causes of action by Claimant against Colonel Clifton Hoskins are **DISMISSED WITH PREJUDICE**.

> IT IS, FURTHER ORDERED, ADJUDGED, AND DECRED that any and all claims and causes of action by Claimant against Hoskins, Inc. are **DIMISSED WITH PREJUDICE**.

*Id*. (emphasis in original).

8

The arbitrator also dismissed, with prejudice, all of Len's claims against Hazel *except* Len's claims to remove Hazel as Executrix and Trustee, his request for an accounting, and his claim against Hazel for damages, attorney's fees, and costs. *Id*.

On February 20, 2013, the order granting summary judgment was reduced to a final arbitration award which ordered, adjudged, and decreed that Len shall take nothing on his claims against Cliff and Hoskins, Inc. Exhibit 17 (Final Arbitration Award).

**H.    The Arbitrator Appoints A Receiver**

Notwithstanding the final arbitration award, on April 16, 2013, the arbitrator appointed Marcus Rogers as Receiver of the Trusts. Exhibit 18 (Order Appointing Receiver). The order stated that the Receiver shall take possession of all Trust property, determine whether Hazel is capable of continuing to serve as Trustee, make such other recommendations as he may deem appropriate, and deliver a report to the arbitrator by June 30, 2013. *Id*. The order stated that the Receiver was appointed at Len's request, and that Len shall pay the Receiver's fees and expenses. *Id*.

**I.    The Receiver Delivers A Report Favorable To Len**

On June 28, 2013, the Receiver delivered a report to the arbitrator that was favorable to Len and critical of Hazel and Cliff. Exhibit 19 (Receiver's Report). The Receiver stated that Hazel did not fund the Trusts, converted assets of the Estate, and breached her fiduciary duties over the course of many years. *Id*. The Receiver also stated that "the trust property now appears to consist primarily of claims against Hazel and Cliff for return of trust property." *Id*. ¶ 6. Despite the settlement agreement, the mutual release and indemnity agreement, and the dismissal of Len's claims against Cliff and Hoskins, Inc. with prejudice, which the Receiver acknowledged, he suggested that he be allowed to "pursue claims against [Hazel] and any

9

conspirators." *Id.* ¶ 5, 10-11.

Finally, the Receiver asserted that Len is not the only beneficiary of the Trusts to whom he owes duties; and that he is also acting to protect the interests of Cowboy and Hazel's grandchildren, who were discretionary income beneficiaries of the Residuary Trust. *Id.* ¶ 7; Exhibit 5 (Cowboy's Will § 6(a)).

## J.    Len And The Receiver Unsuccessfully Challenge The Arbitration Award

Cliff and Hoskins, Inc. filed a petition to confirm the arbitration award in Bexar County. Both Len *and* the Receiver filed motions to vacate the arbitration award.  Exhibits 20 (Len's Motion to Vacate) and 21 (Receiver's Motion to Vacate).   The Receiver objected to the arbitration award and requested that it be modified so as not to fully and finally dispose of his purported claims for: (a) breach of trust against Hazel, Cliff, and Hoskins, Inc.; (b) claims attacking the sale of the Tilden Ranch; and (c) any other claims he may have against Cliff and Hoskins, Inc. *Id.*  The Receiver later filed a supplemental brief in support of his motion to vacate the arbitration award.  Exhibit 22 (Receiver's Supplemental Brief).

On August 2, 2013, the Bexar County District Court denied Len's and the Receiver's motions and entered a final judgment confirming the arbitration award in favor of Cliff and Hoskins, Inc.  Exhibit 23 (Judgment Confirming Arbitration Award).  The court also entered findings of fact and conclusions of law.  Exhibit 24 (Findings of Fact and Conclusions of Law).

Len appealed to the Fourth Court of Appeals in San Antonio, and lost.  The Receiver did not appeal.  Len then appealed to the Supreme Court of Texas, which granted review, received full briefs on the merits, and heard oral argument.  On May 20, 2016, the Supreme Court issued its unanimous opinion in favor of Cliff and Hoskins, Inc., affirming the judgment in all respects. Exhibit 25 (Supreme Court Opinion).  The Supreme Court noted, in its opinion, that:  "The

10

arbitrator appointed a receiver for the trusts who also filed a motion to vacate, which was denied. The receiver did not appeal." *Id.* at 5 n.3.

## K.      The Receiver Goes To The Probate Court

While the appeals from the arbitration award were ongoing, Len's son, Rex, commenced further litigation in the Probate Case.  Rex filed an application to remove his grandmother, Hazel, as Executrix and Trustee, and to appoint a statutory probate judge.  On October 22, 2013, Judge Joe H. Loving, Jr. was appointed to preside over the Probate Case.

On November 22, 2013, the Receiver appeared in the Probate Case by filing a petition to confirm the arbitration order appointing him as Receiver of the Trusts.

On May 23, 2014, Hazel resigned as Executrix and Trustee.  A dependent administratrix was appointed for the Estate[5] and successor trustees were appointed for the Trusts.[6]

On October 1, 2015, the probate court entered an order appointing Marcus Rogers as Receiver of the Trusts.  Exhibit 26 (Order Appointing Receiver).  The Court's order authorized the Receiver to prepare a report, but not to file any claims.  The order stated:  "Additional authority for the Receiver to file litigation to recover assets on behalf of one or both of the Trustees will require further order of the Court." *Id.* ¶ 9.

## L.      The Trusts Terminate Upon Hazel's Death

On October 26, 2015, Hazel passed away at the age of 93.  Under Cowboy's Will, the Trusts terminated automatically upon Hazel's death.  Exhibit 5 (Cowboy's Will §§ V(c) and VI(c)); *see also* TEX. PROP. CODE § 112.052 (a trust terminates by its terms if it is to continue

---

[5]  R. Dyann McCully was appointed as dependent administratrix of Cowboy's Estate.  She later filed a lis pendens in McMullen County, clouding title to the Tilden Ranch.

[6]  Starr Bauer, Judge of the 36th Judicial District Court of Live Oak County, acting in accordance with Cowboy's Will, appointed Gary Jones and George P. "Trace" Morrill III as successor trustees for the Trusts.  Mr. Morrill accepted his appointment but Mr. Jones declined to serve, and Judge Bauer subsequently appointed Joe Carter as successor trustee.  Mr. Carter accepted his appointment.

only until the happening of a certain event and the event has occurred).

Cowboy's Will stated that upon termination of the Trusts, any remaining Trust corpus shall be distributed to his surviving descendants, per stirpes.  Exhibit 5 (Cowboy's Will §§ IV(c) and VI(c)).  It is undisputed that Cowboy's surviving descendants, per stirpes, are his three sons: Lee Roy, Cliff, and Len.[7]

## M.   The Receiver Now Intends To Re-Litigate Everything

On July 18, 2016, the Receiver filed a motion seeking authority to file a lawsuit against Cliff in the probate court.  Exhibit 27 (Receiver's Motion to Confirm Authority).  Attached as "Exhibit B" to his motion is a petition that the Receiver intends to file.  The petition purports to place into controversy the entire administration and distribution of Cowboy's Estate since 1985, the funding of the Trusts, and the sale of the Tilden Ranch to Cliff.  *Id.* (see "Exhibit B" attached thereto).  On July 21, 2016, the Honorable Joe H. Loving, Jr., Presiding Judge in the Probate Court, granted the Receiver's Motion to Confirm Authority to File Lawsuit.  Exhibit 28 (Order).

All claims would be asserted against Cliff, individually; against Cliff, as Independent Executor of Hazel's Estate; and against Cliff, as Successor Trustee of Hazel's Revocable Living Trust.  *Id.*  The Receiver challenges the sale of the Tilden Ranch to Cliff and alleges that all of Cowboy's Estate should have passed into the Residuary Trust.  He further alleges that all of Cowboy and Hazel's community property should be reclassified as Cowboy's separate property such that all property and its proceeds should be recovered by the Receiver into the Residuary Trust.  *Id.*  Attached to the Receiver's petition is a laundry list of assets that the Receiver is seeking to recover.  They include the Tilden Ranch and other real property interests, securities, cash, farm equipment, guns and pistols.  *Id.*

---

[7]  Pursuant to the Settlement Agreement, Lee Roy relinquished all of his interest in the Estate, the Trusts, and Hoskins, Inc.

The Receiver claims that Hazel, aided and abetted by Cliff, breached her fiduciary duties by failing to properly administer and distribute Cowboy's Estate.  The Receiver seeks damages, equitable rescission, an accounting, and the imposition of a constructive trust to recover all property that belonged to Cowboy and Hazel at the time of Cowboy's death in 1985.  The subject matter of the Receiver's petition falls squarely under this Court's Injunction.

The Receiver has agreed to compensate his lawyers with a contingent fee based on the value of all property that he recovers into the Trusts.  Exhibit 27 (Receiver's Motion to Confirm Authority, Exhibit "A").  The Receiver will also be compensated on a contingent fee.

The Receiver is well aware of the legal barriers to bringing claims, as revealed in a response he filed on July 20, 2016 in which he summarized these barriers as follows:  "the parties are enjoined; the Supreme Court has ruled; the claims are barred by limitations; the Court erred in appointing the Receiver; the Receiver does not have standing; etc."  Exhibit 29 (Receiver's Response to Motion for Continuance of Hearing on Receiver's Motion to Confirm Authority to File Lawsuit).  There is no doubt that Len, the Receiver, and their attorneys have actual knowledge of this Court's Injunction.

## ARGUMENT AND AUTHORITIES

**A.**     **Every Injunction Is Binding Upon Parties, Their Agents, Their Attorneys, And All Persons Who Act In Concert Or Participate With Any Of Them.**

Federal law provides that every injunction is binding upon the following persons who receive actual notice of the injunction by personal service or otherwise:

    (A)  the parties;

    (B)  the parties' officers, agents, servants, employees, and attorneys; and

    (C)  other persons who are in active concert or participation with anyone described in [Part (A) or (B) above].

FED R. CIV. P. 65(d)(2); FED. R. BANKR. P. 7065.

This Rule recognizes "a practical reality:  than an aider and abettor can cause the same harm as a named party."  *Schermerhorn v. CenturyTel, Inc. (In re Skyport Global Communs., Inc.)*, Case No. 08-36737-H4-11, 2013 Bankr. LEXIS 3218 *170 (Bankr. S.D. Tex. Aug. 7, 2013) (Bohm, C.J.) (imposing sanctions on parties, their agent, and attorneys for violating injunction that prohibited bringing claims and contacting employees of the debtor).  "Indeed, the very aim of an injunction is to prevent harm".  *Id.*

Thus, it is well settled that a court order "binds not only the parties subject thereto, but also non-parties who act with the enjoined party."  *Whitcraft v. Brown*, 570 F.3d 268, 272 (5th Cir. 2009) (affirming contempt finding against attorney who assisted client to violate order that prohibited sale of property); *NLRB v. Laborers' Int'l Union of N. Am*. 882 F.2d 949, 954 (5th Cir. 1989) ("[A]ny party who knowingly aids, abets, or conspires with another to evade an injunction or order of a court is also in contempt of that court").

"Courts possess the inherent authority to enforce their own injunctive decrees."  *Waffenschmidt v. Mackay*, 763 F.2d 711, 716 (5th Cir. 1985).  "Courts do not sit for the idle ceremony of making orders and pronouncing judgments, the enforcement of which may be flouted, obstructed, and violated with impunity, with no power in the tribunal to punish the offender."  *Id*. (citations omitted).  A violation of an injunction is actionable in the court that issued the injunction, regardless of where the violation occurred.  *Id*. (citations omitted). Enforcement of an injunction through a contempt proceeding must occur in the issuing jurisdiction because contempt is an affront to the court issuing the order.  *Id*.

14

**B.      The Injunction Is Binding Upon Len, The Receiver, And Their Attorneys.**

1.  Part (A) of the Rule

This Court's Injunction defines the "Parties" to include Len, Cliff, Lee Roy and their wives and children.  Exhibit 10 (Order Authorizing Compromise of Controversy).  Thus, Len and all of the grandchildren of Cowboy and Hazel are parties to the Injunction and are bound by it under Part (A) of the Rule.

2.  Part (B) of the Rule

Len's attorney, David Ylitalo, falls within Part (B) of the Rule and he is therefore bound by the Injunction.

The Receiver also falls within Part (B) of the Rule.  In his Report to the arbitrator, the Receiver asserted that he is acting on behalf of Len and all of Cowboy and Hazel's grandchildren (who were discretionary income beneficiaries of the Trusts).  Exhibit 19 ¶ 7 (Receiver's Report).  He asserted that he "owes fiduciary duties to all beneficiaries." *Id.* ¶ 4 (emphasis in original).  At the end of his Report, the Receiver suggested that he should pursue "legal claims for the benefit of all beneficiaries."  *Id.* p. 13.  It is therefore clear that (i) the Receiver has acted, and intended to act, as an officer, agent, servant or employee of Len and all beneficiaries of the Trusts, and (ii) Len and all beneficiaries of the Trusts are parties to the Injunction.  Accordingly, the Receiver is bound by the Injunction under Part (B) of the Rule.

3.  Part (C) of the Rule

The Receiver is represented by attorneys Glen Yale and Jim Hartnett, Jr.  Because the Receiver is bound by the Injunction under Part (B) of the Rule, his attorneys are unavoidably bound by the Injunction under Part (C) as they work for him and are in concert and participation

with him.

Furthermore, the Receiver and his attorneys are bound by the Injunction under Part (C) of the Rule because they have acted in concert or participation with Len and/or Len's attorney to bring litigation against Cliff. On July 21, 2016, the probate court held a hearing on the Receiver's motion for authority to file a lawsuit against Cliff. In addition, the probate court considered the Receiver's application to pay attorney's fees. At that hearing, the Receiver and Mr. Yale testified that:

- Len paid the Receiver's fees in the arbitration;
- Len paid the Receiver's attorney's fees in the arbitration;
- Len, the Receiver, and their respective attorneys travel together to attend hearings in the probate court in Live Oak County, sit at counsel table together at hearings, and have lunch together after hearings; and
- The Receiver and his attorneys had actual notice of the Injunction.

Exhibit 30 at 45-51 (Excerpts from the Hearing Transcript).

To determine if persons are in active concert, they need not be legally affiliated, and the enjoined party need not even be able to control the aider's actions. *Schermerhorn*, 2013 Bankr. LEXIS 3218 *201 (citations omitted). "Rather, courts looks at the "actual relationship" between the parties to determine whether they were pursuing a common interest." *Id*. *202 (citations omitted).

The procedural history, pleadings, and evidence make it clear that Len, the Receiver, and their attorneys have coordinated their efforts to bring litigation against Cliff on subjects that are barred by the Injunction. The Court should hold them in contempt and impose sanctions on them sufficient to compensate Cliff for his damages and to stop all further litigation concerning Cowboy's Estate. If the Receiver has filed his petition before this Court has ruled on this Motion, then the Court should also impose coercive sanctions to require the Receiver to nonsuit all claims against Cliff with prejudice.

16

**C.    If Len, The Receiver, And Their Attorneys Dispute That They Have Acted In Concert To Bring Claims Against Cliff, Then The Court Should Allow Discovery.**

In the event that Len, the Receiver, and their attorneys dispute that they have acted in concert to bring claims against Cliff, then the Court should allow discovery of their communications and meetings so that Cliff can present further evidence showing that they have collaborated, conspired, and acted with a common interest to bring claims in violation of the Injunction.

The Court's precedent for allowing such discovery is found in *Schermerhorn v. CenturyTel, Inc. (In re Skyport Global Communs., Inc.)*, Case No. 08-36737-H4-11, 2013 Bankr. LEXIS 3218 *170 (Bankr. S.D. Tex. Aug. 7, 2013) (Bohm, C.J.).  In *Schermerhorn*, the Court issued an injunction that prohibited the plaintiffs from pursuing any causes of action, derivative or direct, against the debtors.  *Id.* at 24.  The injunction also prohibited the plaintiffs from contacting vendors, employees, and customers of the debtors without permission.  *Id.*  Despite the injunction, the plaintiffs, their attorney, and an investment advisor acted in concert to violate the injunction.  *Id.* *224-230.  Prior to holding them in contempt, this Court required them to produce their emails, phone records, and other documents, and required them to testify at hearings so that the Court could judge their credibility.  The Court wrote a lengthy opinion that detailed all of the evidence of contempt.

In *Schermerhorn*, the Court struck a pleading, expunged it from the record, and imposed legal fees and costs as sanctions for contempt.  The Court noted:

> [T]he right to sanction those who flout this Court's authority is both necessary and integral to this Court's performance of its duties.  Without this power, the Court would be a mere board of arbitration, whose judgments and decrees would be only advisory.  Indeed, if a party can make himself a judge of the validity of orders which have been issued, and by his own act of disobedience set them aside, then are the courts impotent, and what the Constitution now fittingly calls the 'judicial power of the United States' would be a mere mockery.

17

*Id.* *8-9 (citations omitted).  This Court's contempt order in *Schermerhorn* was affirmed on appeal.  *Schermerhorn v. CenturyTel, Inc. (In re Skyport Global Communs., Inc.)*, 528 B.R. 297 (S.D. Tex. 2015) (Lake, J.).

Based on this precedent, if Len, the Receiver, and their attorneys dispute that they have acted in concert, Cliff would request that the Court order them to produce all documents concerning relevant communications[8] between or among:  (a) Len and the Receiver; (b) Len and counsel for the Receiver; (c) the Receiver and counsel for Len; and (d) counsel for Len and counsel for the Receiver.  None of these communications would be protected by the attorney-client privilege.  FED. R. EVID. 501; TEX. R. EVID. 503.  Cliff would also request that each of these individuals be required to answer questions under oath concerning these issues.

D.     **The Receiver Is Attempting To Bring Len's Claims Against Cliff.**

As shown above, federal law makes Len, the Receiver, and their attorneys subject to the Injunction.  But the Receiver is also bound by the Injunction for an additional, fundamental reason that arises from Texas law:  he is attempting to bring Len's claims against Cliff.

Texas law provides that upon termination of a trust, legal and equitable ownership of all Trust property merges and automatically vests in the beneficiaries.  *Kellner v. Kellner*, 419 S.W.3d 541, 546 (Tex. App.—San Antonio 2013, pet. denied) (full ownership of trust property immediately and automatically vests in the beneficiaries when a trust terminates); *Sorrel v. Sorrel*, 1 S.W.3d 867, 870-71 (Tex. App.—Corpus Christi 1999, no pet.) (full ownership of trust property vests in the beneficiaries without the necessity of a conveyance by any person, trustee, or executor).

---

[8]  Relevant communications would be those concerning: Cliff; the Injunction; any subject covered by the Injunction; any matter alleged in the Receiver's Petition; and any work related to the preparation of the Receiver's Petition.

18

The Trusts automatically terminated at Hazel's death in 2015. It is undisputed that the surviving descendants of Cowboy, per stirpes, were his three sons: Lee Roy, Cliff, and Len. In 2002, upon execution of the settlement agreement, Lee Roy disclaimed any and all interests in Cowboy's Estate, the Trusts, and Hoskins, Inc. Thus, at the time of Hazel's death, Lee Roy was not entitled to receive any property from the Trusts. Any corpus in the Trusts is owned by Cliff and Len.

In his report to the arbitrator, the Receiver stated that that "the trust property now appears to consist primarily of claims against Hazel and Cliff for return of trust property." Exhibit 19 ¶ 6 (Receiver's Report). Under Texas law, full ownership of those claims (assuming they exist) immediately and automatically vested in Cliff and Len.

Therefore, the Receiver, who is seeking to sue Cliff to recover alleged Trust property, is attempting to bring Len's claims against Cliff. The Receiver is not a real party in interest. He is being used as a vehicle through which Len's claims can be asserted against Cliff. The Court should not allow litigants and their attorneys to orchestrate shell games for the purpose of evading an Injunction. The claims that the Receiver is attempting to bring are barred by this Court's Injunction (and were disposed of in an arbitration, which was affirmed by the Texas Supreme Court). For this additional reason, the Court should hold Len, the Receiver, and their attorneys in contempt and impose appropriate sanctions to enforce the Injunction.

**E.    The Court's October 30, 2013 Order Regarding The Receiver Does Not Apply Because The Issue Now Presented Did Not Exist At That Time And Was Neither Litigated Nor Decided.**

(1)  Procedural History Leading To The October 30, 2013 Order

After Len lost the arbitration, Cliff filed a petition in Bexar County to confirm the arbitration award. Len improperly removed that action to the bankruptcy court in San Antonio

19

and sought a transfer of venue to Corpus Christi.  The bankruptcy court in San Antonio (King, J.) denied Len's motion to transfer venue and remanded to the Bexar County court.

Len was not deterred.  On June 14, 2013, Len improperly commenced Adversary Proceeding No. 13-02010 in this Court against Cliff.  Len did so by filing an "Emergency Complaint for Temporary Injunctive Relief and to Interpret Court's Prior Orders to Determine Where Confirmation of Arbitration Award Should be Decided."  Exhibit 31 (Len's Emergency Complaint).  Len argued that this Court's Injunction prohibited Cliff from confirming the arbitration award in Bexar County.  *Id*.

Cliff filed a motion to dismiss the adversary proceeding or, alternatively, for abstention. Exhibit 32 (Cliff's Motion to Dismiss or Abstain).  Cliff argued that Len's complaint was an improper collateral attack on the decision of the San Antonio bankruptcy court, which Len failed to appeal.  Len filed a response, arguing that this Court, not the Bexar County court, should decide whether to confirm or vacate the arbitration award.  Exhibit 33 (Len's Opposition to Motion to Dismiss).

On July 12, 2013, this Court entered an order denying Len's emergency complaint for temporary injunctive relief.  Exhibit 34 (Order Denying Len's Emergency Complaint).  The Court held that Cliff did not violate the Injunction by filing a petition to confirm the arbitration award in Bexar County "because to pursue confirmation of the arbitration award was inherent in the order ordering the parties to arbitration."  *Id*.

A few months later, despite having denied Len's requested relief, the Court still had not ruled on Cliff's motion to dismiss the adversary proceeding.  In addition, the Bexar County court had by that time entered its judgment confirming the arbitration award.  Therefore, Cliff filed a motion to dismiss the adversary proceeding due to mootness.  Exhibit 35 (Cliff's Motion to

20

Dismiss Due to Mootness).

On October 30, 2013, the Court entered an order dismissing the adversary proceeding without prejudice (hereinafter, the "October 30, 2013 Order").  Exhibit 36 (Order Regarding Motion to Dismiss Adversary Proceeding).  The October 30, 2013 Order contained four numbered paragraphs.  Number three stated:

> The Court finds that the Injunction does not prohibit the confirmation of any arbitration award awarded to any party pursuant to the Arbitration Order nor does the Injunction apply to the receiver, Marcus P. Rogers, appointed pursuant to the Arbitrator's Order Appointing Receiver issued on April 16, 2013, or any successor receiver.

*Id*.  As explained below, the Receiver cannot hide behind this language to violate the Injunction. The October 31, 2013 Order confirmed that the Injunction did not prohibit the Receiver from continuing to perform his duties in the arbitration under the Arbitrator's Order Appointing Receiver, which did not authorize the filing of any litigation.  The Court did *not* give the Receiver a free pass to file claims that are barred by the Injunction.

<u>(2)  The Issue Now Presented Did Not Exist And Was Neither Litigated Nor Decided</u>

The October 30, 2013 Order does not mention any issue that was raised by the parties concerning the Receiver.  It provides no context for the Court's sentence regarding the Receiver. Importantly, none of the parties' motions and responses that were considered and ruled upon in the October 30, 2013 Order even mentioned the Receiver.  These Court filings show that nobody had asserted that the Receiver was violating the Injunction.  The issue now presented was not before the Court.

Context for understanding the October 30, 2013 Order is found in two sources:  (1) the facts that existed at that time; and (2) the transcript of the hearing that preceded the October 30, 2013 Order.

21

First, consider the facts.  As of October 30, 2013, the Receiver had not yet appeared in the Probate Case.  He had not sought authority from the probate court to do anything, much less to bring claims against Cliff.  Even two years later, on October 1, 2015, when the probate court appointed the Receiver, it expressly declined to give him authority to file litigation, ordering that such authority would require further orders from the probate court.  Exhibit 26 ¶ 9 (Order Appointing Receiver).

As of October 30, 2013, the only order that existed concerning the Receiver was the arbitrator's order appointing the Receiver, signed on April 16, 2013.  Exhibit 18 (Arbitrator's Order Appointing Receiver).  The arbitrator's order stated that the Receiver shall (1) take possession of all Trust property and administer the Trusts, (2) determine whether Hazel is capable of continuing to serve as Trustee, (3) make such other recommendations as he may deem appropriate, and (4) deliver a report to the arbitrator by June 30, 2013.  *Id*.  The arbitrator did not authorize the Receiver to file litigation.[9]  *Id*.  The Receiver could make "recommendations" but had no authority to file a lawsuit.

Thus, the facts make it clear that when the Court entered the October 30, 2013 Order, the Receiver was not authorized to file any litigation.  In context, the Order does not relate to any contemplation of litigation by the Receiver.  It is therefore unreasonable to read the Order as authorizing the Receiver to file litigation, much less litigation on subjects that are barred by the Injunction.

Second, the October 30, 2013 Order recites that the Court held a hearing on September 23, 2013.  The transcript of that hearing is attached.  Exhibit 37 (Hearing Transcript).  It shows

---

[9]  Note that even if the arbitrator had authorized litigation (which he did not), the arbitrator could not have lawfully ordered litigation of matters that are barred by this Court's Injunction.  This Court appointed the arbitrator; the arbitrator had no power to contravene this Court's Injunction or any other orders.

the following:

- Patricia Tomasco, counsel for Len, stated that the arbitrator appointed the Receiver, who filed a report recommending that Hazel be removed as Trustee and that certain transactions she made as Trustee be undone;[10]

- Ms. Tomasco stated that she would eventually seek confirmation of the Receiver's appointment in state court, and wanted to avoid future disputes about whether doing so would violate the Injunction;[11]

- Ms. Tomasco therefore suggested that the Injunction be dissolved;[12]

- David Kinder, counsel for Cliff, stated that Len's claims against Cliff (which were dismissed with prejudice in the arbitration) were severed into a final arbitration award, leaving only certain claims of Len against Hazel still pending in the arbitration;[13]

- The Court stated that it wanted to make sure the remaining issues between Len and Hazel could move forward in the arbitration;[14]

- Ms. Tomasco stated that she wanted to make sure Len would be free to confirm the appointment of the Receiver in state court without fear of violating the Injunction;[15]

- Ms. Tomasco again asked that the Injunction be dissolved; she stated that she wanted to eliminate concerns about whether the Receiver is violating the Injunction by "now trying to protect the beneficiaries of the Trust";[16]

- The Court stated that it was not inclined to dissolve the injunction because of the history of this case i.e., "because this is a case that's been so litigated";[17]

- Finally, the Court stated: "I'm inclined to allow you [i.e., Len] to go forward against Hazel, do all you want in that arbitration, like you're doing, but not re-litigate things over and over again, okay?"[18]

---

[10]  Ex. 37 at 7-9 (Hearing Transcript).

[11]  *Id.*

[12]  *Id.* at 9.

[13]  *Id.* at 10.  Note that the only claims Len still had against Hazel were claims to remove her as Executrix and Trustee, and claims for damages and attorney's fees.  *See* Exhibit 16 (Order Granting Summary Judgment).  All of Len's other claims against Hazel had been dismissed.  *Id.*

[14]  *Id.* at 12-13.

[15]  *Id.* at 16.

[16]  *Id.* at 17.

[17]  *Id.* at 18-19.

23

The October 13, 2013 Order, read in conjunction with the hearing transcript, leaves no doubt that: (a) the Court wanted to maintain its prohibition against litigating matters that are covered by the Injunction; (b) the Court wanted to allow the parties to file state court actions to confirm orders and awards issued by the arbitrator; and (c) the Court wanted to allow the Receiver to perform his duties, in the arbitration, in compliance with the Arbitrator's Order Appointing Receiver.

The Court did *not* give the Receiver permission to file any litigation.  In 2013, the Court was not confronted with any conflict between the Receiver's activities and the Injunction.  The Receiver's activities under the Arbitrator's Order Appointing Receiver (which did not authorize the filing of litigation) did not violate the Injunction.  Clearly, the issue now presented to the Court did not exist back in 2013, was not actually litigated, and was not decided.

(3)  No Person May Assist Another Person To Violate An Injunction

As discussed above, Rule 65(d)(2) and well-settled federal case law clearly provide that every injunction is binding upon the parties, their agents, their attorneys, and all persons who act in concert or participation with any of them.  There is no carve out for a receiver, a trustee, an administrator, or anybody else.  No person has a categorical waiver from the Rule so that he may violate an injunction or assist others to do so.  Anybody who assists others to violate an injunction is himself liable for violating the injunction.  *See Whitcraft v. Brown*, 570 F.3d 268, 272 (5th Cir. 2009); *NLRB v. Laborers' Int'l Union of N. Am.* 882 F.2d 949, 954 (5th Cir. 1989).

The October 30, 2013 Order must be interpreted consistent with federal law, not contrary to it.  As shown above, the Court did not give the Receiver a free pass to file lawsuits that are prohibited by the Injunction.  The Court was simply confirming that the Injunction does not

---

[18]  *Id*. at 19.

24

restrict the Receiver from performing his duties under the Arbitrator's Order Appointing Receiver (which did not authorize the filing of litigation).

For all of the foregoing reasons, the Court's October 30, 2013 does not apply to the present proceedings and affords no refuge to Len, the Receiver, and their attorneys to violate this Court's Injunction.

**CONCLUSION**

The Hoskins family agreed to a global settlement, release, and permanent Injunction to establish a lasting peace over the administration and distribution of Cowboy's Estate. The Injunction is supposed to protect all family members from harassment, expense, uncertainty, and injury caused by further litigation concerning Cowboy's Estate. The need for finality is fundamental to American law and underpins this Court's Injunction. Len is a vexatious litigant and has refused to obey the Injunction. Acting in concert with the Receiver, Len is attempting to re-litigate and unwind the administration and distribution of Cowboy's Estate, matters that were fully and finally settled and are barred by the Injunction. Len, the Receiver, and their attorneys are bound by the Injunction and this Court must not allow them to violate it.

Cliff respectfully requests that the Court enforce its Injunction against Len, the Receiver, and their attorneys, holding them in contempt and imposing sanctions on them to compensate Cliff for his fees and expenses, and to stop all further litigation concerning Cowboy's Estate. Cliff requests all other and further relief to which he may be entitled.

Respectfully submitted,

DYKEMA COX SMITH
Deborah D. Williamson
State Bar No. 21617500
dwilliamson@dykema.com
C. David Kinder
State Bar No. 11432550
dkinder@dykema.com
Mark J. Barrera
State Bar No. 24050258
mbarrera@dykema.com
Melanie L. Fry
State Bar No. 24069741
mfry@dykema.com
112 East Pecan Street, Suite 1800
San Antonio, Texas  78205
Telephone:  (210) 554-5500
Facsimile:  (210) 226-8395


By: _/s/ Deborah D. Williamson_

*Attorneys for Colonel Clifton Hoskins*

26

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served

on the following persons by the method indicated below on this 17th day of August, 2016:

Leonard K. Hoskins                                  Motion with Exhibits Via Personal
2401 Rainy River Court                              Delivery and Certified Mail, RRR
Corpus Christi, Texas 78414


David L. Ylitalo                                    Motion Via E-mail and Motion with CD
YLITALO LAW FIRM                                    containing Exhibits Via CM, RRR
319 Maverick Street
San Antonio, Texas  78212
d.ylitalo@ylitalolaw.com
*Attorneys for Leonard K. Hoskins,*
*William Rex Hoskins, and Daniel Kenton Hoskins*


Marcus P. Rogers                                    Motion Via E-mail and Motion with CD
LAW OFFICES OF MARCUS P. ROGERS, P.C.               containing Exhibits Via CM, RRR
2135 East Hildebrand Avenue
San Antonio, Texas  78209
mpr2222@aol.com
*Receiver*


Glen A. Yale                                        Motion Via E-mail and Motion with CD
YALE LAW FIRM, P.C.                                 containing Exhibits Via CM, RRR
2135 East Hildebrand Avenue
San Antonio, Texas  78209
glenyale@yalelawfirm.com
*Attorneys for Marcus P. Rogers, Receiver*


James Hartnett, Jr.                                 Motion Via E-mail and Motion with CD
THE HARTNETT LAW FIRM                               containing Exhibits Via CM, RRR
220 North Pearl Street
Dallas, Texas  75201-7315
jim@hartnettlawfirm.com
*Attorneys for Marcus P. Rogers, Receiver*


George P. "Trace" Morrill, III                      Motion Via E-mail and Motion with CD
MORRILL & MORRILL, PLLC                             containing Exhibits Via CM, RRR
309 North Washington Street
Beeville, Texas  78102
trace_morrill@me.com
*Trustee of the Residuary Trust*

27

| | |
|---|---|
| Royal B. Lea, III | Motion Via E-mail and Motion with CD |
| BINGHAM & LEA, P.C. | containing Exhibits Via CM, RRR |
| 319 Maverick Street | |
| San Antonio, Texas  78212 | |
| royal@binghamandlea.com | |

*Attorneys for Southwest Ranching, Inc., Lee Roy Hoskins, Jr., Lee Roy Hoskins, III, Andrea Clare Jurica, and Lee Ann Hoskins Kulka*

| | |
|---|---|
| Brendan C. Holm | Motion Via E-mail and Motion with CD |
| David W. Navarro | containing Exhibits Via CM, RRR |
| HORNBERGER FULLER & GARZA | |
| The Quarry Heights Building | |
| 7373 Broadway, Suite 300 | |
| San Antonio, Texas  78209 | |
| bholm@hfgtx.com | |
| dnavarro@hfgtx.com | |

*Attorneys for Brent C. Hoskins*

| | |
|---|---|
| Ezra A. Johnson | Motion Via E-mail and Motion with CD |
| UHL, FITZSIMONS, JEWETT & BURTON, PLLC | containing Exhibits Via CM, RRR |
| 4040 Broadway, Suite 430 | |
| San Antonio, Texas  78209 | |
| ejohnson@ufjblaw.com | |

*Attorneys for Blake Hoskins*

| | |
|---|---|
| Joe L. Carter, Jr. | Motion Via E-mail and Motion with CD |
| The Petroleum Center | containing Exhibits Via CM, RRR |
| 4657-C1 Business 181-N | |
| Beeville, Texas  78102 | |
| joe@joecarter.biz | |

*Trustee of the Marital Deduction Trust*

| | |
|---|---|
| Kevin P. Kennedy | Motion Via E-mail and Motion with CD |
| ATTORNEY AT LAW | containing Exhibits Via CM, RRR |
| 1920 Nacogdoches Road, Suite 100 | |
| San Antonio, Texas  78209-2241 | |
| kpk@texas.net | |

*Attorney for Joe Carter, Trustee of the Marital Deduction Trust*

| | |
|---|---|
| Michael C. Sartori | Motion Via E-mail and Motion with CD |
| LAW OFFICE OF MICHAEL C. SARTORI | containing Exhibits Via CM, RRR |
| 502A Houston Street / P.O. Box 1222 | |
| George West, Texas  78022 | |
| Michael@msartori.com | |

*Attorney for C. Clifton Hoskins, Independent Executor of the Estate of Hazel Q. Hoskins,  Deceased*

28

David C. Bakutis/R. Dyann McCully            Motion Via E-mail and Motion with CD
BAKUTIS, MCCULLY & SAWYER, P.C.           containing Exhibits Via CM, RRR
500 West Seventh Street, Suite 725
Fort Worth, Texas  76102
dbakutis@lawbms.com
dmccully@lawbms.com
*Attorneys for Dependent Administratrix With Will Annexed of*
*the Estate of Lee Roy  Hoskins, Sr., Deceased*


*/s/ C. David Kinder*
 C. David Kinder

29

# APPENDIX

Exhibit

Chronology ..................................................................................................................1

Mutual Release and Indemnity Agreement (March, 2003) ...........................................2

Certificate of Incorporation of Hoskins, Inc. (April 25, 1980) .....................................3

Deed (June 24, 1980) ...................................................................................................4

Last Will and Testament of Lee Roy Hoskins, Sr. (Cowboy's Will - July 20, 1982) ...................5

Affidavit (February 16, 1994) .......................................................................................6

Plaintiff's (Lee Roy, Jr.) Original Petition (Live Oak Co. - August 17, 2001) ..............................7

Plaintiff Lee Roy Hoskins, Jr.'s Second Amended Original Complaint and
Request for Declaratory Judgment (Bankruptcy Court - April 16, 2002) .......................................8

Settlement Agreement (April 20, 2002).........................................................................9

Order Authorizing Compromise of Controversy Between Southwest Ranching, Inc.,
Hoskins, Inc., Hazel Hoskins, Lee Roy Hoskins, Jr., Colonel Clifton Hoskins, and
Others (July 1, 2002)....................................................................................................10

Judgment entered by Judge Richard Schmidt (October 18, 2002) ...............................11

Warranty Deed (February 19, 2004)..............................................................................12

Plaintiff's (Len's) Original Petition (McMullen County - May 7, 2008) .....................13

Amended Order Granting Motion to Appoint Arbitrator (August 30, 2011) ................14

Len's Complaint in Arbitration (September 23, 2011)...................................................15

Order Granting Respondents' Motion for Summary Judgment on Claimant's
Claims (Arbitration - February 14, 2012) .....................................................................16

Final Arbitration Award Concerning Hoskins, Inc. and Colonel Clifton Hoskins
(February 20, 2013) ......................................................................................................17

Arbitrator's Order Appointing Receiver (April 16, 2013)............................................18

Report of Receiver's  (June 28, 2013) ..........................................................................19

Defendant's Objection to Jurisdiction, and Subject Thereto, Motion to Transfer
Venue, and Subject Thereto, Motion to Vacate Arbitration Award (May 21, 2013) ...................20

Marcus P. Rogers,' Receiver of the Marital Trust and Residuary Trust Under the Will of Lee Roy Hoskins, Sr., Deceased, Motion to Vacate Final Arbitration Award, or in the Alternative, Objections to the Final Arbitration Award Concerning Hoskins, Inc. and Colonel Clifton Hoskins (May 21, 2013) ...................................21

Marcus P. Rogers' Receiver of the Marital Trust and Residuary Trust Under the Will of L.R. Hoskins, Sr., Deceased, Supplemental Brief Following Hearing on the Final Arbitration Award Concerning Hoskins, Inc. and Colonel Clifton Hoskins (July 18, 2013) ...............................................................................................22

Judgment Confirming Arbitration Award (Judge Peter Sakai) (August 2, 2013) .........................23

Findings of Fact and Conclusions of Law (Judge Peter Sakai) (September 19, 2013) ...........................................................................................................................24

No. 15-0046; *Leonard K. Hoskins v. Colonel Clifton Hoskins and Hoskins, Inc.*; Supreme Court of Texas Opinion affirming the Fourth Court of Appeals' Judgment affirming arbitration award with Concurring Opinion issued by Justice Don R. Willett (May 20, 2016) ....................................................................................25

Order Appointing Receiver signed by Judge Loving (October 1, 2015) .......................................26

Receiver's Motion to Confirm Authority to File Lawsuit and Notice of Execution of Fee Agreement (July 18, 2016) ...............................................................................27

Order Granting Receiver's Motion to Confirm Authority to File Lawsuit (July 21, 2016) ....................................................................................................................28

Receiver's Response to Colonel Clifton Hoskins and Hoskins, Inc.'s Motion for Continuance of Hearing on Receiver's Motion to Confirm Authority to File Lawsuit..................................................................................................................................29

Hearing Transcript excerpts (pages 45-51) (July 21, 2016) .........................................................30

Leonard K. Hoskins's Emergency Complaint for Temporary Injunctive Relief and to Interpret Court's Prior Orders to Determine Where Confirmation of Arbitration Award Should Be Decided (Bankruptcy Court - June 14, 2013) ...................................31

Colonel Clifton Hoskins' and Hoskins, Inc.'s Motion to Dismiss Adversary Proceeding or, in the Alternative, For Abstention and Motion for Attorney's Fees (Bankruptcy Court - June 20, 2013) ...............................................................................32

Leonard K. Hoskins's Opposition to Motion to Dismiss Adversary Proceeding or, In the Alternative, For Abstention and Motion for Attorney's Fees (Bankruptcy Court – July 11, 2013) ...............................................................................................33

31

Order Denying Leonard K. Hoskins's Emergency Complaint for Temporary
Injunction and To Interpret Court's Prior Orders to Determine Where
Confirmation of Arbitration Award Should Be Decided
(Bankruptcy Court – July 12, 2013) ............................................................................34

Colonel Clifton Hoskins' and Hoskins, Inc.'s Motion for an Order Dismissing
Adversary Due to Mootness and Motion for Attorney's Fees (Bankruptcy Court -
August 28, 2013) ..........................................................................................................35

Order Regarding Motion to Dismiss Adversary Proceeding (Bankruptcy Court -
October 30, 2013) .........................................................................................................36

Hearing Transcript (Bankruptcy Court - September 23, 2013) ....................................37

4849-7534-9045.3