IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| SOUTHWEST RANCHING, INC., | § | CASE NO. 01-23337-C-11 |
| DEBTOR, | § | (CHAPTER 11) |

_____

## RECEIVER MARCUS ROGERS' RESPONSE TO MOTION FOR LEONARD HOSKINS; MARCUS ROGERS, RECEIVER; AND THEIR ATTORNEYS TO APPEAR AND SHOW CAUSE WHY THEY SHOULD NOT BE HELD IN CONTEMPT FOR VIOLATING THIS COURT'S INJUNCTION

**TO THE HONORABLE BANKRUPTCY COURT:**

Marcus Rogers, Receiver ("Rogers"), files this Response to Cliff Hoskins'
Motion for Leonard Hoskins; Marcus Rogers, Receiver; and Their Attorneys to
Appear and Show Cause Why They Should Not be Held in Contempt for Violating
This Court's Injunction.

## I.  Introduction

Cliff Hoskins has spent years using the Bankruptcy Court's anti-suit
injunction as a weapon to protect his conversion (and possibly his mother's) of an
estate and trust.  The 2002 Settlement and the Court's Injunction were intended to
bring an end to certain ongoing contentious litigation among family members, but
the 2002 Settlement left Cowboy Hoskins' Estate largely intact with his Residuary
Trust as the Estate's beneficiary.  After the 2002 Settlement, Cliff and his mother

1

(either purposefully or because of Cliff's wrongdoing) simply stole the rest of the Estate's and Residuary Trust's assets.

Cliff's brother, Leonard Hoskins ("Len"), tried to correct this injustice, but was rebuffed for lack of standing (and, possibly, limitations). Now that the Receiver holds the claims of the Residuary and Marital Trusts, possesses the standing to do what Len could not, and carries authorization by the Probate Court to sue, Cliff attempts to use the injunction as both sword and shield to protect his post-settlement wrongdoing.

## II.  Background

- Cowboy Hoskins ("Cowboy") died leaving a July 20, 1982 Will. The Will appointed his wife, Hazel ("Hazel"), as executor, and Hazel and a bank as co-trustees of the Residuary Trust and the Marital Trust (Ex 8). The Marital Trust could only be funded after the Residuary Trust was funded. Hazel swore in the estate tax return that only the Residuary Trust would receive assets and that the Marital Trust would not be funded (Ex 9).

- Cowboy Hoskins' Estate is being administered in the County Court in Live Oak County under Cause No. 1785. When litigation was initiated in the probate proceeding in 2013, a retired statutory probate judge, Joe Loving, was appointed to handle Cowboy's Estate and the related litigation (the "Probate Court").

- Cowboy had three sons:  Cliff, Len, and Lee Roy.  Litigation ensued by Lee Roy against his mother and Cliff.  Someone caused Southwest Ranching, Inc. to seek bankruptcy protection and the family litigation was pulled into the bankruptcy proceeding.  A family settlement was reached in 2002 (Ex 10).  The Bankruptcy Court entered an order approving the settlement and entered an anti-suit injunction (Ex 1).

- In the 2002 Settlement (Ex 10) and a subsequent Mutual Indemnity and Release (Ex 11), Cliff released any claims that he had against, among others, Hoskins, Inc., an asset of the Estate and Residuary Trust.  Within months following the settlement, Cliff, who was running Hoskins, Inc., claimed that Hoskins, Inc. owed him hundreds of thousands of dollars even though he had released any such claims as part of the settlement.  Cliff caused Hoskins, Inc. to "sell" him a valuable ranch for this fictitious released debt. At that time, Hoskins, Inc. was owned by either the Estate and Hazel, or the Residuary Trust and Hazel.  This is just one example of the post-settlement, post-injunction claims that Rogers intends to pursue (Ex 6).

- Years later, Len tried to sue Cliff, and later Hazel, over the ranch transaction.  The case was arbitrated and Cliff succeeded in blocking Len's claims due to lack of standing or limitations (Ex 12, pp. 3-4).  The claims related to the ranch transaction were not resolved on their merits.

3

- The arbitrator appointed Rogers as a receiver for the Residuary and Marital Trusts (Ex 4).

- The Bankruptcy Court allowed litigation against Hazel in the Probate Court in Live Oak County, where Statutory Probate Court Judge, Joe Loving, was presiding (Ex 3).

- The Bankruptcy Court specifically determined that the permanent injunction did not apply to Rogers, and Rogers joined the lawsuit in the Probate Court (Ex 2).

- Hazel, who was likely incompetent (and was being represented by Cliff via a power of attorney), resigned as trustee, and the probate litigation ground to a halt while a state district judge was tasked with searching for potential successor trustees (a requirement of Cowboy's Will).  Hazel has since died. After a lengthy delay, the probate litigation re-started, and Rogers was ultimately appointed as receiver for the Residuary and Marital Trusts by the Probate Judge.  Rogers was initially ordered to prepare a report (Ex 5).

- Cliff appealed the Probate Court's appointment of Rogers in Cause No. 13-15-00487-CV in the Thirteenth Court of Appeals.  The Court affirmed Rogers' appointment on September 8, 2016 (Ex 13).

- Rogers filed his report describing numerous claims against Cliff and Hazel's Estate (Ex 14), Rogers then asked the Probate Court for authority to file the

4

attached petition (or something similar) against Cliff and Hazel's Estate (Ex 6).  Cliff opposed any expanded authority (Ex 15); however, the Probate Court specifically authorized Rogers to file suit against Cliff and Hazel's Estate (Ex 7).  However, Rogers' new lawsuit has not yet been filed.

- Rogers' proposed petition (Ex 6) asserts claims against Cliff, Hazel's Estate, and other descendants of Cowboy Hoskins relating to properties they have wrongfully appropriated **after** the 2002 Settlement, assets which rightfully belong to the Estate and/or the Residuary Trust.

## III.   Response

### A.  Summary of the Response

The Motion to Show Cause, and, in particular, the attempt to hold Rogers and his counsel in contempt, is meritless – indeed it is frivolous – for numerous reasons.

First, the Bankruptcy Court has already held that the injunction did not apply to Rogers (Ex 2).

Second. Cliff argues that the Court must look behind the previous orders to understand what they mean, but injunctions and orders must be specific on their face in order to enforce them for contempt; and injunctions must be strictly and narrowly construed based on the language actually contained in the injunction itself, not on some "legislative history" or "hidden meaning".

5

Third, the Bankruptcy Court has already authorized litigation in Live Oak County in which Rogers is participating (Ex 3).

Fourth, on its face, the injunction does not even apply to Rogers (Ex 1).

Fifth, Cliff's allegation that Rogers is also bound by the injunction because he has acted in concert with Len is frivolous and ignores the fact that Rogers holds the claims of the Estate and Trust, not Len.  Rogers is pursuing his own claims, not Len's.

Sixth, Rogers cannot be in contempt even if the injunction arguably applies, because Rogers has not yet filed any litigation other than that which has already been authorized by this Court. The injunction, even if applicable, only applies to the actual filing of litigation – which simply has not happened.

Seventh, the Probate Exception prevents the Bankruptcy Court from enforcing an injunction which interferes with the Probate Court's jurisdiction over the res of the estate and its testamentary trusts.

The attempt by Cliff to claim that the injunction was violated, when it clearly was not, is simply an attempt to induce this Court to expand the nature and scope of the injunction beyond what was intended and what is within the proper purview of the Court. Accordingly, in the alternative, if the Court believes that the injunction arguably applies to Rogers pursuing the new claims, the Court should clarify or lift the injunction to allow Rogers to prosecute his claims against Cliff,

Hazel's Estate, and other Hoskins family members.

## B. The Bankruptcy Court Has Already Held That The Injunction Does Not Apply To Rogers

This Court has already held that the injunction does not apply to Rogers.  On October 30, 2013, the Court specifically stated,

> "nor does the injunction apply to the receiver, Marcus P. Rogers, appointed pursuant to the arbitrator's order appointing receiver issued on April 16, 2013, or any successor receiver." (Ex 2)

The October 30, 2013 order is clear.  Having already stated that the injunction did not apply to Rogers, the Court later recognized that Rogers had filed suit in the Probate Court and noted that the pendency of Rogers' lawsuit made it appropriate for all issues to be decided in that court.  The Bankruptcy Court specifically lifted the injunction for another Party (Rex Hoskins) to participate in the Probate Court litigation (December 17, 2013 Opinion & Order, Ex 3).

The October 30, 2013 order, coupled with the December 17, 2013 opinion and order, make it clear that Cliff's action to hold Rogers and his counsel in contempt, much less sanction them, is frivolous.  Indeed, it is readily apparent that Cliff's motion is brought for an improper purpose – to use the Court as a weapon to keep Rogers from fulfilling his duties to the Probate Court.

## C. Cliff's "Context" Argument Is Irrelevant To The Injunction – It Is What It Says It Is And Cannot Be More

To circumvent the clear holding of the October 30, 2013 Order, Cliff argues

7

that the Court must look behind the October 30 Order and understand the "context" under which it was entered. The attempt to engraft some sort of "legislative history" on the terms and language of the injunction is misplaced, and violates fundamental legal principles. The Court's orders, particularly injunctions, are what they are; say what they say; and the language of the injunction cannot be expanded by reading between the lines to enjoin someone or hold someone in contempt; especially when Rogers was specifically told by the Court that the injunction did not apply to him. Rogers cannot be held to have violated an injunction where he has to read between the lines or second-guess the plain meaning of this Court's October 30, 2013 Order.

The law is clear. "A party commits contempt when he violates a **definite and specific order** of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order." *Travelhost, Inc. v. Blandford*, 68 F.3d 958, 961 (5th Cir. 1995) (quoting from *Securities and Exchange Commission v. First Financial Group of Texas, Inc.*, 659 F.2d 660, 669 (5th Cir. 1981)) (emphasis added).

Nevertheless, Cliff asks the Court to look behind the October 30, 2013 Order to sanction Rogers (and his counsel). Cliff argues that Judge Schmidt did not mean what he said when he wrote that the injunction did not apply to Rogers. Cliff tries to read Judge Schmidt's mind, and claims that Judge Schmidt was really just

8

holding that the injunction did not apply because Rogers was not then pursuing litigation.  To make that argument, in addition to mind-reading, Cliff has to ignore the December 17, 2013 Order in which Judge Schmidt specifically recognized that Rogers had actually filed litigation[1] in the Probate Court and still did not find that Rogers was violating the injunction.

Indeed, not only does Cliff refrain from discussing the December 17, 2013 Order, it is conveniently missing from his exhibits.  Having stated that the injunction did not apply to Rogers; having recognized that Rogers had already filed litigation in the Probate Court, and having authorized others to join it, it is inconceivable how one could argue that Judge Schmidt meant something other than what he wrote.

**D.  <u>On Its Face, The Injunction Does Not Apply To Rogers</u>**

The injunction specifically applies only to the "Parties" (Ex 1).  Rogers acknowledges that under Federal Rules of Civil Procedure, Rule 65(d) and common law, an injunction can also bar nonparties who have notice of the injunction and who are (A) the parties' officers, agents, servants, employees, and attorneys; or (B) who are in active concert or participation with an enjoined party.

The purpose of the rule is to prevent parties from nullifying "a decree by

---

[1] Referring to the original litigation in 2013.  The reality is that Rogers can also file his new claims as counterclaims as crossclaims in that original lawsuit.

carrying out prohibited acts through aiders and abettors, although they were not parties to the original proceeding." *Waffenschmidt v. MacKay*, 763 F.2d 711, 717 (5th Cir. 1999) (quoting from *Regal Knitware Co. v. National Labor Relations Board*, 324 U.S. 9, 14, 65 S.Ct. 478, 481, 89 L.Ed. 661 (1945).

Rogers acknowledges that he has had notice of the injunction. But Rogers is not named in the injunction and was not a Party, nor is he a Party's officer, agent, servant, employee, or attorney. Consequently, the only way the injunction could apply to Rogers is if he is "in active concert or participation" with a Party to assist that Party to violate the injunction. Cliff claims that, because Len previously paid Rogers' fees and expenses; because Rogers has met with Len and his counsel; because Rogers has driven to Live Oak County with Len's counsel; and because Rogers has fraternized with them (at lunch); he is in active concert or participation with them to violate the injunction.

Rogers does not dispute that, for a period of time, Len paid his fees and expenses as ordered by the arbitrator. That fact is well-known and was well-known in October and December of 2013, too, when Judge Schmidt held that the injunction did not apply to Rogers. Nor does Rogers dispute that he has frequently talked with Len and his counsel, driven to hearings with Len's counsel, and even had lunch with Len and his counsel after hearings in Live Oak County. But none of this brings Rogers under the purview of the injunction as a person "in active

concert or participation" to assist Len in violating the injunction.

The gist of that rule is that Len cannot use someone, like Rogers, to do what he cannot do.  But Rogers has his own independent claims. It is ironic that Cliff now claims that Rogers is in active concert and participation with Len to pursue claims that Len, by Cliff's own admission, does not even own.  Cliff prevailed on his claim that Len lacked standing to pursue the claims (Ex 12).  Now, Cliff tries to argue that the actual owner of the claims cannot assert them because he would be aiding and abetting Len.  That kind of circular logic is nonsensical.  Rogers holds claims that Cliff admits Len did not hold.

Even though Rogers' claims may be similar to the claims Len attempted to assert (if he owns any), or may be claims that Len encourages Rogers to pursue, or may be claims that Len tries to help Rogers pursue, the fact that Rogers holds these claims, independent of Len, removes Rogers from the umbrella of persons "in active concert or participation".

Federal courts universally accept the rule that nonparties who assert their own independent rights are not subject to the expanded scope of Rule 65(d) as aiders and abettors.  In *Parker v. Ryan*, 960 F.2d 543, 546 (5th Cir. 1992), the Court addressed the ability of the district court to enjoin nonparties under Rule 65(d) and stated, "conversely, 'if a nonparty asserts an independent interest in the subject property and is not merely acting on behalf of the defendant, then Rule

65(d) does not authorize jurisdiction over the party'" (quoting *Waffenschmidt,* 763 F.2d at 718).  Because Rogers is asserting his independent rights by asserting the claims, then Rule 65(d) cannot subject him to enforcement of the injunction as an aider and abettor.

A similar case, dealing with the right to assert claims in a lawsuit, is *Doctors Associates, Inc. v. Reinert & Duree, P.C.*, 191 F.3d. 297 (2nd Cir. 1999), which held that a court could not enforce an injunction against nonparty franchisees who were asserting their own legal rights, even though the nonparty franchisees' claims were identical to the enjoined franchisees' claims and that were represented by the same lawyer.

Also, underscoring the lack of merit in Cliff's argument that Rogers is just "aiding and abetting" Len is Rogers' expressed intention to sue Len.  In the draft petition that Rogers submitted to the Probate Court, Rogers has proposed suing Len for the recovery of estate and trust property that Len has improperly received from Hazel.  Suing Len is the antithesis of acting in concert with Len.

## E.  Cliff Is Not Entitled To Discovery On His Aiding And Abetting Claim

Cliff has asked the Court to allow him to conduct discovery concerning the interaction between Rogers, his counsel, and others (including Len and his counsel).  The point would be to produce evidence to support Cliff's aiding and abetting claim (active concert and participation).  As noted above, Rogers is

12

asserting his own claims rather than helping Len to assert Len's claim.  Thus, the discovery would be irrelevant.   Furthermore, there is no dispute to justify discovery, since Rogers acknowledges that Len paid him for a time pursuant to the arbitration order; that he has driven to hearings with Len's counsel; that he has received documents and background information from Len and his counsel; and that he has had lunch with Len and his counsel after some Probate Court hearings.

The Court should also take note that Cliff already lost the argument that Rogers' alleged bias in favor of Len rendered Rogers an unsuitable receiver.  In his appeal of Rogers' appointment by the Probate Court, Cliff claimed that Len's fee payments, the meetings, the lunches, and the sharing of information all rendered Rogers unsuitable and biased, making the Probate Court's appointment of Rogers an abuse of discretion.  The Court of Appeals specifically rejected Cliff's bias argument (Ex 13).

## F.  <u>Rogers Simply Has Not Violated The Injunction</u>

Rogers (and his counsel) cannot be held in contempt because he has not violated the injunction, even if applicable.  The injunction enjoins the instigation or continuation of litigation.  While Rogers *has been authorized to file the new claims by the Probate Court*, he has not filed it.  Accordingly, he cannot be held in contempt nor sanctioned for instigating or continuing litigation which he has not filed.

13

However, while the Court cannot hold Rogers (or his counsel) in contempt or sanction them for violating the injunction, Rogers does not wish to even arguably violate the injunction.   Accordingly, if the Court believes that the injunction is unclear or somehow could be read to preclude Rogers from filing the Probate Court-authorized lawsuit, then Rogers welcomes that clarification and instruction from the Court.

### G.   The Probate Exception Leaves The Court Without Jurisdiction To Issue Or Enforce An Injunction Relating To The Administration And Settlement Of The Probate Estate

Even if the injunction applied to Rogers and his planned lawsuit, enforcement of the injunction against Rogers would be precluded by the Probate Exception, under the facts of this case.   The Probate Exception eliminates federal court jurisdiction on certain matters that are properly within the exclusive purview of state probate courts.   In *Marshall v. Marshall*, 547 U.S. 293, 299, 310, 126 S. Ct. 1735, 164 L. Ed. 2d 480 (2006), the Supreme Court restated the Exception stating:

> The probate exception reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate; it also precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court.

*Id*. at 311-12.   The Court explained that federal courts could still adjudicate rights in property that was subject to the control of a probate court so long as the court's

judgment "does not undertake to interfere with the state court's possession save to the extent that the state court is bound by the judgment to recognize the rights adjudicated by the federal court." *Id.* at 310 (quoting *Markham v. Allen*, 326 U.S. 490, 494, 66 S.Ct. 296, 90 L.Ed. 256 (1946).

Under the facts of this case, enforcement of the injunction against Rogers would cross the line drawn by the Supreme Court and the subsequent Fifth Circuit Court of Appeals' interpreting *Marshall.* For example, in *Curtis v. Brunsting*, 704 F.3d 406 (5th Cir. 2013), the Fifth Circuit interpreted the Supreme Court's *Marshall* opinion to require a two pronged analysis, to look at "(1) whether the property in dispute is estate property within the custody of the probate court and (2) whether the plaintiff's claims would require the federal court to assume in rem jurisdiction over that property." *Id*. at 409.

By enforcing the injunction against Rogers, the Bankruptcy Court might not be literally assuming in rem jurisdiction directly over property under administration in the Probate Court, but the Court would effectively be doing so by preventing the Probate Court's administration of that property, because enforcement of the Bankruptcy Court's injunction against Rogers would prevent the Probate Court from administering the estate property under its control. Rogers has been appointed by the Probate Court to hold the Estate's and the Residuary Trust's claims against Cliff and Hazel and to prosecute them. Enforcing the

15

injunction would have the effect of interfering with the Probate Court's custody of the Estate's and Residuary Trust's "res," which is precluded by the Probate Exception.

A similar situation arose in the Tom Benson litigation in San Antonio. There, the probate court appointed receivers for the testamentary trusts of Shirley L. Benson. Tom Benson attempted to remove the case to a federal district court in the Western District. The district court remanded the case, holding, among other reasons, that the trust and estate property was in the probate court's custody and "the Court therefore may not assume in rem jurisdiction over or otherwise dispose of the property. Because removal would require the Court to both assume in rem jurisdiction over and administer the trust and estate property, the Court is barred from accepting jurisdiction." *Benson v. Benson*, 2015 WL 3622335 (W.D. Tex).

Although one can argue that the *Benson* removal action is different because it completely eliminated the probate court's jurisdiction; here, enjoining Rogers would have the same inappropriate result. If the Bankruptcy Court enjoins Rogers, the Probate Court would no longer be able to administer or protect the Estate and Residuary Trust property under its control. Preventing Rogers from carrying out his Probate Court-authorized duty with respect to the assets of testamentary trusts under the control of the Probate Court violates the Probate Exception.

16

## IV.   In The Alternative, If The Injunction Applies to Rogers, It Should Be Lifted

If the Court finds that the injunction could apply to Rogers for pursuing the post-settlement claims, the Court should lift the injunction so that Rogers can carry out his duties and prosecute the claims as authorized by the Probate Court.  The Bankruptcy Court has previously recognized that the Live Oak County probate litigation was permitted (Ex 3).  Although that probate lawsuit initially involved only claims against Hazel and Rogers' lawsuit will involve claims against both Cliff and Hazel's estate, Rogers must be allowed to prosecute his claims as authorized by the Probate Court.  Therefore, to the extent the injunction applies to Rogers, the Court should lift the injunction to specifically allow Rogers to pursue his claims against Cliff and Hazel's estate and any other Party to the injunction against whom Rogers may have claims.

## V.   Prayer

WHEREFORE, Rogers prays the Court find that he has not violated the injunction; that he is not in contempt; that he should not be sanctioned; that the injunction does not apply to him; that, to the extent the injunction does apply, it is lifted; and grant him general relief.

Respectfully submitted,

**THE HARTNETT LAW FIRM**

By:   __/s/ Jim Hartnett, Jr._____
        Jim Hartnett, Jr.

17

Texas Bar Card No. 09169200
jim@hartnettlawfirm.com

2920 N. Pearl Street
Dallas, Texas  75201
Telephone (214) 742-4655
Facsimile (214) 855-7857

ATTORNEYS MARCUS P. ROGERS,
RECEIVER OF THE MARITAL TRUST
AND RESIDUARY TRUST UNDER THE
WILL OF L. R. HOSKINS, SR.,
DECEASED

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing was served (ii) via email to the persons below on September 22ND, 2016; and (iii) via email upon the parties that receive electronic notice in these cases pursuant to the Court's ECF filing system.  Most of the parties and lawyers below are not participants in the bankruptcy case.

Eric Terry
ERIC TERRY, PLLC
4040 Broadway Street, Suite 350
San Antonio, TX  78209
Facsimile (210) 319-5447
eric@ericterrylaw.com

David Ylitalo
YLITALO LAW FIRM
319 Maverick Street
San Antonio, TX  78212
Facsimile (210) 224-0141
d.ylitalo@ylitalolaw.com

C. David Kinder/Deborah Williamson
Mark J. Barrera/Melanie L. Fry
DYKEMA COX SMITH
112 E. Pecan Street, Suite 1800
San Antonio, TX  78205
Facsimile (210) 226-8395
dkinder@dykema.com
ewilliamson@dykema.com
mbarrera@dykema.com

R. Dyann McCully/David C. Bakutis
BAKUTIS, MCCULLY & SAWYER
500 W. Seventh Street, Suite 725
Fort Worth, TX  76102
Facsimile (817) 332-6532
dmccully@lawbms.com
dbakutis@lawbms.com

18

mfry@dykema.com

George P. "Trace" Morrill, III
MORRILL & MORRILL, P.L.L.C.
309 N. Washington
Beeville, TX  78102
Facsimile (361) 358-3106
Trace_morrill@me.com

Royal B. Lea, III
BINGHAM & LEA, P.C.
319 Maverick Street
San Antonio, TX 78212
royal@binghamandlea.com

Ezra A. Johnson
UHL, FITZSIMMONS, JEWETT &
BURTON, PLLC
4040 Broadway, Suite 430
San Antonio, TX  78209

Facsimile (210)829-1641
ejohnson@ufjblaw.com

Brendan C. Holm/David W. Navarro
HORNBERGER FULLER & GARZA
The Quarry Heights Building
7373 Broadway, Suite 300
San Antonio, TX  78209
Facsimile (210) 271-1730
bholm@hfgtx.com
dnavarro@hfgtx.com

Ron Simank
SCHAUER & SIMANK PC
615 N. Upper Broadway Street
Suite 700
Corpus Christi, Texas  78401

Kevin P. Kennedy
Attorney at Law
1920 Nacogdoches Road
Suite 100
San Antonio, TX  78209
kpk@texas.net

Michael C. Sartori
Attorney at Law
502A Houston Street
P.O. Box 1222
George West, TX  78022
Facsimile (261) 449-2380
michael@msartori.com

Glen A. Yale
YALE LAW FIRM, P.C.
2135 E. Hildebrand Avenue
San Antonio, TX  78209
Facsimile (210) 881-0160
glenyale@yalelawfirm.com

Joe L. Carter, Jr.
The Petroleum Center
4657-C1 Business 181 North
Beeville, TX  78102
joe@joecarter.biz

Marcus P. Rogers
LAW OFFICE OF MARCUS P. ROGERS
2135 E. Hildebrand Avenue
San Antonio, TX  78209
Facsimile (210) 881-0160
mrogers@marcusrogerslaw.com

Facsimile (361) 884-2822
rsimank@cctxlaw.com

                                  /s/ Jim Hartnett, Jr.
                                          Jim Hartnett, Jr

# APPENDIX

Exhibit

Order Authorizing Compromise of Controversy Between Southwest
Ranching, Inc., Hoskins, Inc., Hazel Hoskins, Lee Roy Hoskins, Jr.,
Colonel Clifton Hoskins, and Others (07/01/02)
(The Permanent Injunction) ................................................................. 1

Order Regarding Motion to Dismiss Adversary Proceeding (10/30/13) ............... 2

Memorandum Opinion and Order on Emergency Motion to
Enforce Permanent Injunction (12/17/13) ............................................... 3

Arbitrator's Order Appointing Receiver (04/16/13) ................................... 4

Probate Court's Order Appointing Receiver (10/01/15) ........................... 5

Application for Authority to Investigate, Pursue,
and Settle Claims (06/13/16) ............................................................. 6

Order Granting Receiver's Application for Authority to Investigate,
Pursue, and Settle Claims (06/16/16) and Order Granting Receiver's
Motion to Confirm Authority to File Lawsuit (07/21/16) ..................... 7

Last Will and Testament of Lee Roy Hoskins, Sr. dated 07/20/82 ............ 8

Excerpt from the Estate of Lee Roy Hoskins, Sr. U.S. Tax Return,
Form 706 (12/30/05) ....................................................................... 9

Settlement Agreement (04/20/02) ...................................................... 10

Mutual Release and Indemnity Agreement (07/10/03) ........................ 11

Supreme Court Opinion in *Leonard K. Hoskins v. Colonel Clifton
Hoskins and Hoskins, Inc.*, No. 15-0046 (05/20/16)
__ S.W.3d ___, 2016, WL 2993929 ................................................ 12

Thirteenth Court of Appeal Opinion in *Estate of*
*Lee Roy Hoskins, Sr., Deceased*, No. 13-15-00487-CV, (__/__/16)
 (2016 WL 4699193) .............................................................................. 13

Receiver's Report, without attachments (03/14/16) ............................................ 14

Colonel Clifton Hoskins and Hoskins, Inc.'s Response to Receiver's
Application to Set Receiver's Compensation, Receiver's Application
for Authority to Enter into a Contingent Fee Agreement, and Receiver's
Application for Authority to Investigate, Pursue, and
Settle Claims (06/15/16) ....................................................................... 15